## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOULEYMANE DIARRA,<br>　　　　Petitioner | : | No. 3:26cv1336 |
| | : | |
| | : | (Judge Munley) |
| 　　v. | : | |
| | : | |
| ANGELA HOOVER, Warden of Clinton: | | |
| County Correctional Facility; BRIAN | : | |
| MCSHANE, Acting Philadelphia Field | : | |
| Office Director, United States | : | |
| Immigration & Customs Enforcement,: | | |
| 　　　　Respondents | : | |

## MEMORANDUM ORDER

Petitioner Souleymane Diarra is a native and citizen of Mali. He is a civil

immigration detainee held at FCI Lewisburg by the Department of Homeland

Security ("DHS"), Immigration and Customs Enforcement ("ICE") pending

removal proceedings. Before the court is Diarra's petition for writ of habeas

corpus under 28 U.S.C § 2241.[1]  (Doc. 1). The petitioner argues that his

prolonged detention without a bond hearing under 8 U.S.C. § 1226(c) violates his

Fifth Amendment right to due process of law. Id,, Count One. He asks the court

to compel his outright release. In the alternative, he requests a prompt bond

hearing before an Immigration Judge ("IJ") at which DHS will have the burden to

demonstrate by clear and convincing evidence that the Petitioner is either a flight

---

[1] The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2241(c)(3).

risk or danger to the community and at which the IJ will consider alternatives to detention. In petitioner's traverse, he switches gears and requests that the court conduct any bond hearing if that is the relief afforded. (Doc. 6 at 2).

Diarra's detention without a bond hearing has grown unreasonable. However, he will not be released from detention as he requests. He will not receive an immigration bond hearing in federal court. Rather, for the reasons set forth below, the petition will be granted relief in the form of a bond hearing before an IJ. The bond hearing will occur under the standard set forth later in this order.

According to the averments in the petition, Diarra is 41-years-old. (Doc. 1, ¶ 2). He was admitted to the United States in 2007, at age 21, with F-1 student status. Id. He became a lawful permanent resident on July 23, 2009. Id. Diarra has a 14-year old daughter, a United States citizen. Id. ¶ 5. His two sisters are United States citizens. Id. He owns two residential properties. Id. He also owns his own business, M&S Autobody, LLC. Id.

On the other hand, DHS previously determined that Diarra attempted to gain citizenship through a sham marriage. That is, DHS denied petitioner's application for naturalization in February 2019. (Doc. 5-2, Resp. Ex. 1, I-213 Form, at 5). The naturalization application was denied after Diarra's wife told USCIS officers during a surprise home visit that she had entered into a marriage

2

arrangement with the petitioner in exchange for $500.00 and cable bill payments. Id., USCIS Decision, at 42–49.

Diarra is also a convicted felon. He was convicted after a jury trial in the Eastern District of Pennsylvania on several federal offenses: 1) conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; 2) counterfeit access device fraud and aiding an abetting same in violation of 18 U.S.C. § 1029; 3) aggravated identity theft and aiding abetting same in violation of 18 U.S.C. § 1028A; and 4) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. (Doc. 1-1, Pet. Ex. D). On November 9, 2022, the Honorable Wendy Bettlestone sentenced petitioner to 61 months of imprisonment followed by three years of supervised release. Id.

Judge Beetlestone sentenced Diarra to five years of incarceration, but he was released in less than three. (Doc. 1, Pet. ¶ 7–8). That is, the petitioner obtained a reduction of his sentence under various federal statutes, including 18 U.S.C. § 3624(b)(1) for good conduct time credits and 18 U.S.C. § 3632, a provision of the First Step Act which provides time credits for participation in recidivism reduction programs.[2] Id. ¶ 7. Per the petitioner, he completed several

---

[2] The court previously denied Diarra's Section 2241 petition seeking to compel the Bureau of Prisons ("BOP") to transfer him to prerelease custody. Diarra v. Greene, No. 3:25-CV-0964, 2025 WL 2997031, at *5 (M.D. Pa. Oct. 24, 2025).

rehabilitative programs at Allenwood Low, earned many certifications, and had no disciplinary problems. Id.

Diarra finished his federal criminal sentence of incarceration in November 2025. He was then transferred to ICE custody and placed at the Clinton County Correctional Facility.

Prior to the transfer, ICE screened the petitioner, issued him a Notice to Appear, and lodged an immigration detainer. (Doc. 1-1, Pet. Ex. E) DHS charged the petitioner as deportable under 8 U.S.C. § 1227(a)(2)(A)(ii) (for committing crimes of moral turpitude) and § 1227(a)(2)(A)(iii) (for committing aggravated felonies). Id.

Diarra's removal proceedings are ongoing. IJs denied his motion to terminate the removal charges and his application for deferral of removal to Mali under the Convention Against Torture. Id., Ex. F. An IJ ordered the petitioner removed to Mali on March 18, 2026. Id. Petitioner filed a timely appeal to the Board of Immigration Appeals on April 8, 2026. Id., Ex. G. That appeal remains pending.

Diarra is now detained at FCI Lewisburg after recently being transferred from the Clinton County Correctional Facility. (Doc. 7). Both parties agree that 8 U.S.C. § 1226(c) applies to the petitioner's re-detention in federal prison. Diarra argues that the government has violated his right to due process of law by

4

detaining him for approximately eight months without an ability to obtain a bond hearing or release on conditions.

Section 1226(c) is a mandatory detention statute. 8 U.S.C. § 1226(c)(1)(A). It does not limit the length of the detention it authorizes, Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), but "a petitioner may still bring an as-applied constitutional challenge alleging that his continued detention has become unconstitutional under the Due Process Clause of the Fifth Amendment." Ibrahim v. Superintendent of Miami Corr. Facility, No. 1:25-CV-00727, 2026 WL 116489, at *4 (M.D. Pa. Jan. 15, 2026) (Wilson, J) (citing German Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203, 208–09 (3d Cir. 2020)). In such as-applied challenges, "when detention becomes unreasonable, the Due Process Clause demands a hearing." German Santos, 965 F.3d at 210 (quoting Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011)).

Reasonableness is "a 'highly fact-specific' inquiry." Id. (quoting Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 474 (3d Cir. 2015)). In this circuit, there is a non-exhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable: 1) duration of detention; 2) whether the detention is likely to continue; 3) the reasons for the delay; and 4) whether the conditions of confinement are meaningfully different from criminal confinement. Id. at 211 (citations omitted).

***Duration of Detention*** – Duration of detention is the most important factor. Id. Under the case law, "[t]here is no presumption of reasonableness or unreasonableness of any duration." Id. (citing Chavez-Alvarez, 783 F.3d at 474 n.7; Diop, 656 F.3d at 234). The longer noncitizens are detained under Section 1226(c) without bond hearings, however, "the more likely their detention abridges the liberty secured by the Due Process Clause." Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 433 (3d Cir. 2026) (citations omitted). In Michelin, the Third Circuit reiterated clearly: detention becomes more and more suspect after five months for Section 1226(c) detainees. Id. (citing German Santos, 965 F.3d at 211–12)).

As it stands, Diarra has been detained by ICE for approximately eight months without a bond hearing. That is less than the periods typically found unreasonable in this district for Section 1226(c) detainees, at least in the decisions before the Third Circuit's discussion in Michelin. See Yirenkyi v. Hoover, No. 3:25CV2414, 2026 WL 268230, at *4, and Appx. (M.D. Pa. Feb. 2, 2026) (collecting cases). After eight months, constitutional concerns are beginning to accrue with respect to Diarra's detention. However, the duration factor weighs only slightly in favor of relief, if at all.

6

With that said, duration is only one factor and there are no bright lines in the reasonableness analysis. See Chavez-Alvarez, 783 F.3d at 474, n.7.  The Fifth Amendment requires a more granular look at the other facts of this case.

***Likelihood of Continued Detention*** – The second German Santos factor considers the likelihood of continued detention.  This factor weighs in favor of relief.  Diarra has appealed his removal order to the BIA.  He has indicated his firm intent to appeal any adverse ruling by the BIA to the Third Circuit Court of Appeals.  If that results in a decision favorable to the petitioner, his immigration case will continue to be litigated while the petitioner would otherwise remain detained.  If that process results in a final order of removal, the United States government will need to make arrangements with the government of Mali for Diarra's removal.  Mali has experienced an asymmetric, multilayered civil war over the last fifteen years.  The present Malian government is essentially a military junta. That government faces an ongoing insurgency from separatists, which have recently combined forces with al-Qaeda-linked militant groups to carry out attacks on urban areas. (Doc. 1-1, Pet. Exh. I).  Even when not considering these Mali-specific issues, other statutory provisions authorize continued detention after a removal order becomes final.  See 8 U.S.C. § 1231(a)(1)–(2) (authorizing a 90-day period of mandatory detention after a removal order becomes administratively final), § 1231(a)(6) (authorizing

discretionary detention after that period).  No matter where Diarra's proceedings go from here, detention is foreseeably measured in years, not months.  This factor favors granting the habeas petition.

*Reasons for the Delay* –  The third German Santos factor considers the reasons for the delay, "such as a detainee's request for continuances." 783 F.3d at 211 (citing Diop, 656 F.3d at 234; Demore v. Kim, 538 U.S. 510, 531 (2003)).  The court also asks "whether either party made careless or bad-faith 'errors in the proceedings that cause[d] unnecessary delay.' " Id. (quoting Diop, 656 F.3d at 234).  There is no evidence of either side delaying removal proceedings or requesting continuances.  Thus, this factor is neutral.  See id. at 212.

*Conditions of Confinement* – The fourth German Santos factor requires a determination of whether "the alien's conditions of confinement are meaningfully different from criminal punishment." Id. at 211 (cleaned up).  Under the law, "if an alien's civil detention ... looks penal, that **tilts the scales** toward finding the detention unreasonable." Id. (citing Chavez-Alvarez, 783 F.3d at 478) (emphasis added)).

FCI Lewisburg is a medium security federal prison.  Diarra asserts that he now faces greater restrictions than when he was in custody of the BOP at FCI Allenwood Low. (Doc. 9, Traverse, at 6).  Diarra has thus persuaded the court

8

that his civil immigration detention is indistinguishable from criminal punishment. This factor weighs heavily in Diarra's favor.

***Other Considerations*** – The four German Santos factors are non-exhaustive. 965 F.3d at 210. Therefore, the court takes a step back and looks at the whole picture. From this top-level view, Diarra faces government supervision whether he is detained in a federal prison or not. As discussed above, Diarra was sentenced in federal court as part of a conspiracy to commit financial crimes. If not in ICE custody, Diarra would have been released from prison by now due to good time credits and for participating in recidivist reduction programs. Upon any release from immigration detention, the petitioner is still subject to three years of supervision by the United States Probation Office with standard and special conditions as part of his criminal sentence. (Doc. 1-1, Pet. Exh. I). Absent relief, Diarra will spend many more months inside a federal prison as he exhausts his appellate rights on the removal order. Based on his criminal sentence, Diarra will be watched closely by federal probation officers for three years if he is ultimately released. The three years of supervised release and its attendant conditions also weigh in favor of granting the habeas petition.

Therefore, on the balance of the non-neutral German Santos factors, the conditions of confinement and the criminal supervised release considerations

9

outweigh considerations like the time Diarra has spent in immigration detention thus far. The petition for writ of habeas corpus will be granted in part.

***Form of Relief*** – Count Two of Diarra's petition argues that the Executive Office for Immigration Review ("EOIR") does not provide a neutral forum for bond requests as required by the Due Process Clause. (Doc. 1, Pet. ¶ 15). Diarra also argues that the current system fails to ensure that IJs are neutral. In support, the petitioner has attached the present version of a Department of Justice ("DOJ") website, https://join.justice.gov. Id., Pet. Ex. I. On that website, the DOJ advertises the position of immigration judge as "deportation judge" instead.[3] Id. Further, Diarra's petition cites to an article published by WGBH in Boston after three IJs were fired by the administration, ostensibly for their rulings. Another article relied upon by the petitioner, published by Politico, refers to IJ bond hearings as "pre-cooked" and "predetermined." Id. Petitioner argues that he should thus be given immediate release.

On such evidence, a job advertisement and two internet articles, the undersigned will not declare that the EOIR provides a biased forum or that the DOJ now only hires IJs that will conduct bond hearings choreographed to

---

[3] Congress has defined the term "immigration judge" as "an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review, qualified to conduct specified classes of proceedings, including a hearing under [8 U.S.C. § 1229a]." 8 U.S.C. § 1102(b)(4). Further, by statute, "[a]n immigration judge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe, but shall not be employed by the Immigration and Naturalization Service." Id.

10

achieve one outcome.  Past circuit court rulings highlighting "[a] disturbing pattern of IJ misconduct" did not reach that conclusion.[4]  Wang v. Att'y Gen. of U.S., 423 F.3d 260, 269 (3d Cir. 2005) (reviewing cases).

In the alternative, Diarra requests that the court conduct any bond hearing. At present, other judges in this district conduct bond hearings for Section 1226(c) detainees upon a determination that their time in custody has grown unreasonable under the Due Process Clause. Chiguano v. Lowe, No. 1:24-CV-02210, 2025 WL 3187161, at *4 (M.D. Pa. Nov. 14, 2025), further relief granted, 2025 WL 3280946, at *3 (M.D. Pa. Nov. 25, 2025) (Wilson, J.); Perez-Espinosa v. Hoover, No. 3:26-CV-01650, 2026 WL 1894517, at *6 (M.D. Pa. July 1, 2026); Lin v. Lowe, 3:26-CV-01453, 2026 WL 1746582, at *6 (M.D. Pa. June 17, 2026); Rodriguez v. Hoover, No. 3:26-CV-01207, 2026 WL 1454166, at *6 (M.D. Pa. May 22, 2026); Olarewaju v. Lowe, No. 3:26-CV-00631, 2026 WL 1045076, at *6 (M.D. Pa. Apr. 17, 2026), further relief granted, 2026 WL 1122316, at *2 (M.D. Pa. Apr. 24, 2026) (release on conditions) (Mehalchick, J.).  Even still, in many of these circumstances, hearings were scheduled in the district court due to "the risks of perpetuating constitutional injury with continued delays," see e.g., Lin, 2026 WL 1746582 at *6 (citing Centeno-Martinez v. Jamison, No. CV 25-3593,

---

[4] More than a decade ago, the Third Circuit remarked: "In recent years, the executive branch has concentrated its resources on criminal aliens—especially those subject to mandatory detention." Sylvain v. Att'y Gen. of U.S., 714 F.3d 150, 155 (3d Cir. 2013).

11

2025 WL 3157711, at *3 (E.D. Pa. Nov. 12, 2025) (Sanchez, J.)), not due to a determination that the DOJ's system was broken.

In contrast to the above cases, the court will not conduct a bond hearing at this time. Any concerns with further delay may be resolved by an order directing the release of the petitioner if a bond hearing is not conducted in 14 days. Additionally, the court will fashion relief assuming that the IJ assigned will be neutral and impartial and place the burden on the government, not the petitioner, as German Santos requires. Specifically, the bond hearing must comport with the following:

- Petitioner must be afforded timely and adequate notice of the bond hearing, the ability to be represented by counsel of his own choosing, and the right to confront and cross-examine any adverse witnesses. Goldberg v. Kelly, 397 U.S. 254, 270–71 (1970).

- IJs must be neutral, Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996), and impartial, Schweiker v. McClure, 456 U.S. 188, 195 (1982). That is, "grudging and perfunctory review is not enough to satisfy due process[.]" Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999), amended (Dec. 30, 1999).

- IJs "must assiduously refrain from becoming advocates for either party[.]" Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003)

12

(quoting Aguilar–Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999)).
The IJ cannot step into the role of the attorney for the government.
Abulashvili v. Att'y Gen. of U.S., 663 F.3d 197, 207 (3d Cir. 2011)

- There must be a complete record of the proceedings. Marincas, 92 F.3d at 203.

- The hearing must include the services of a competent translator or interpreter in the petitioner's primary language. See id. at 204.

- Petitioner must be provided an individualized determination of risk of flight and danger to the community. Abdulai v. Ashcroft, 239 F.3d 542, 549–50 (3d Cir. 2001).

- The government, not the petitioner, bears the burden at the hearing and must justify continued detention by clear and convincing evidence. German Santos, 965 F.3d at 213.  The clear and convincing evidence standard is met if the government can "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984).

- At the hearing, "[m]easures must be taken to assess the risk of flight and danger to the community on a current basis." Chi Thon Ngo, 192 F.3d at 398 (emphasis added).  "The fact that some aliens posed a

13

risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption." Id. "Due process is not satisfied…by rubberstamp denials based on temporally distant offenses." Id.

- After the government presents evidence on flight risk and/or danger, and although the petitioner will bear no burden at the hearing, the petitioner must be allowed to make arguments on his own behalf. See Abdulai, 239 F.3d at 549.  In Diarra's case, he can then present the evidence he supplied to the court about his child, his sisters, his release on bond in his criminal case, and the authorization to self-surrender at FCI Allenwood Low several years ago.

- With respect to any decision, the petitioner is entitled to factfinding based on the record produced before the IJ and disclosed to him. Id.

- Finally, petitioner is entitled to a reasoned on-the-record decision, sufficient for the court to later determine whether the hearing complied with due process, Goldberg, 397 U.S. at 271; Abdulai, 239 F.3d at 549–50, or whether the petitioner is impermissibly requesting direct review of the bond decision, Borbot v. Warden Hudson Cnty.

14

Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (discussing a jurisdiction-stripping provision at 8 U.S.C. § 1226(e)).

"Meticulous care must be exercised lest the procedure…not meet the essential standards of fairness." Bridges v. Wixon, 326 U.S. 135, 154 (1945). Should the petitioner believe that his bond hearing did not meet these essential standards of fairness, the federal district courts remain open to address any future petitions.  Consequently, for the reasons set forth above, it is hereby **ORDERED** that:

1) Souleymane Diarra's petition for writ of habeas corpus, (Doc. 1), is **GRANTED** in part;

2) The government shall, within 14 days of the date of this order, provide Diarra with an individualized bond hearing before an IJ in accordance with the analysis in the memorandum order;

3) At that hearing, the government will bear the burden of establishing, by clear and convincing evidence, that Diarra's continued detention is necessary because he presents a flight risk or danger to the community if released;

4) On or before **July 24, 2026**, respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Diarra has received a bond hearing in accordance with this memorandum or has been released; and

15

5) The Clerk of Court is directed to **CLOSE** this case.

**Date:** 7/9/26

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**